# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

*OF THE STATE OF NEW-JERSEY.*

OCTOBER TERM, 1835.

---

## Joseph H. Fennimore and others v. Samuel Fennimore, and the Administrators of Thomas Fennimore, deceased.

Executors are not necessarily liable for each other's acts, or responsible for the money which comes to each other's hands.

As a general rule, each executor is answerable for no more than he receives.

Where a testator by his will directs that if either of his executors, at public sale, purchase any part of his real estate, the other executor shall execute a deed conveying the land so purchased, either of the executors has a right to purchase, and the other is bound to execute the necessary conveyance.

The purchaser may retain the purchase money in his own hands as assets, and his co-executor can neither compel him to pay it nor to give security for its payment as a condition of executing the deed.

It has been repeatedly decided in this court, that where executors account jointly, without specifying the amount of receipts and disbursements by each and showing the balance in each one's hands, they are all concluded and bound. Does this principle prevail? *Quere.*

After a general settlement is made by executors or administrators in the usual way, the orphans' court have no power to adjust difficulties between them respecting their receipts and disbursements. These are private matters over which the court has no jurisdiction.

Where executors exhibit a joint account, and connected therewith a separate account showing the receipts and disbursements of each executor, and the

court decree an allowance of the account as stated, the joint account must be considered as qualified and explained by the separate one.

BILL by legatees against one executor and the administrators of a deceased co-executor, for the recovery of a legacy and an account. The surviving executor was unable to respond. The estate of the deceased executor, by whom the larger part of the estate had been received, was solvent. The bill sought to charge both executors with the amount due upon the legacy. A decree pro confesso was taken against the surviving executor. The administrators of the deceased executor answered, stating the amount of the estate which had come to the hands of their intestate, and insisting that his estate ought not to be held liable beyond that amount. The master having reported the amount which came to the hands of each of the executors, and the report having been confirmed, the case was heard upon the equity reserved. The only question submitted, was as to the extent to which the executors were respectively liable.

*Wall*, for complainants.

*Brown* and *H. W. Green*, for defendants.

THE CHANCELLOR. Samuel Fennimore, and Thomas Fennimore, now deceased, were executors of the last will and testament of Thomas Fennimore, the elder, deceased. The residuum of the estate was directed to be divided into five equal shares. One of those shares he directed to be placed at interest, and the interest arising therefrom to be paid annually to his son John Fennimore, during his natural life, and after his death, the principal with the unexpended balance of the interest, if any, to be paid to John's children. John having died in eighteen hundred and twenty-nine, this suit was instituted to recover the legacy. It was referred to a master to take an account, and ascertain the balance of the estate, or the residuum, after payment of debts and specific legacies; and also to ascertain in whose hands

[Fennimore v. Fennimore.]

the money actually was, and what sums were in the hands of the said executors severally. The master reported the residuum to be twenty thousand one hundred and fifty-four dollars and five cents, on the seventh of November, eighteen hundred and fifteen—the one fifth part of which is equal to four thousand and thirty dollars and eighty-one cents; and that the whole amount of principal and interest due to the complainants on the ninth of January, eighteen hundred and thirty-five, was seven thousand and eighty-seven dollars and sixty-eight cents. He also reported that of this amount there was

In the hands of Samuel,      -     -      $ 2632 22

In the hands of Thomas's administrators,   4454 78

The report of the master has been confirmed, and the cause is now set down on the equity reserved. The only question raised is as to the joint liability of the two executors. Samuel is supposed to be in failing or doubtful circumstances, and if the estate of Thomas, his co-executor, is not liable for the assets in the hands of Samuel, the complainants may lose a portion of their legacy.

Executors are not necessarily liable for each other's acts, or responsible for the money which comes to each other's hands. As a general rule, they are answerable for no more than they receive; but by their own conduct they may make themselves answerable in a variety of ways.

In the case under consideration, it is contended that Thomas or his estate should answer for the probable defalcation of Samuel, because Samuel was a purchaser at public sale of real estate of the testator, to the amount of three thousand seven hundred and twenty-two dollars and twenty-three cents; and Thomas executed a conveyance to him for the land so purchased, without receiving the purchase money or taking any security for the payment.

The executors were children of the testator, and for aught that appears, both enjoyed his confidence in an equal degree. In the will he directed his lands to be sold at public sale. The testator, it would seem, anticipated that these sons might become

purchasers of part of it, and he was careful to make provision for the contingency. The fourth item or devise of the will is as follows:—"As the execution of my will makes it necessary that my real estate should be sold, I direct my executors and the survivor of them to make public sale thereof, within one year after my decease, and to execute legal conveyances thereof to the purchaser or purchasers: and should either of my executors at public sale become a purchaser of any part of my said real estate, I will and order that the other executor do make to the other so purchasing, a deed or deeds conveying the same; which deed or deeds so made by one of my executors to the other, shall convey a fee simple in the said real estate, and be as good and effectual as their joint deed or deeds would be to any other purchaser."

By this clause either executor had a right to purchase, and the other was bound to make the necessary conveyance, and could not withhold it. The purchase money was so much of the assets of the estate. It was in the hands of one of the executors, and I do not see upon what principle the other could compel the payment of the money over to him. Samuel was bound to pay this purchase money in a due course of administration, but he was not bound to pay it to Thomas, his co-executor; and if not bound to pay, he could not be required to give security for it. Such security could only have been taken for the payment of the money to Thomas, and not for the payment of it to the legatees. Thomas had no right to require security in favor of the legatees. That could be done only in a particular mode pointed out by the statute. It could only be required of Samuel as a purchaser; and as I have already remarked, Samuel being both purchaser and executor, and the consideration being assets in his hands, he had a perfect right to retain it as against the other executor.

If Thomas had demanded security of Samuel, a similar demand would doubtless have been made by Samuel of Thomas, who was also a purchaser. The result would have been, that this part of the assets would have changed hands. The purchase money for the property purchased by Samuel would have gone to Thomas, and that for the property purchased by Thomas

would have gone to Samuel. No security would have been furnished to the legatees by such a change; and in this case the result would have been disastrous to them, for the amount of real estate purchased by Thomas was greatly larger than that purchased by Samuel, and of course Samuel would have had much more money in his hands than he now has.

I can see no justice or equity in charging the estate of Thomas, on this ground.

It is insisted, in the next place, that the executors have accounted jointly in the orphans' court, and that they are jointly bound by the decree of the court on the final settlement of the account.

It has been decided in this court in more than one case, that where executors account jointly, without specifying the amount of receipts and disbursements by each, and showing the balance in each one's hands, they are all concluded and bound. The decisions rest on the principle, that the decree of the orphans' court upon a final settlement, is in the nature of a judgment; and that after such judgment, the parties cannot be permitted to set up any matter in avoidance of its operation. Such was the decree of this court in the case of *Philemon Dunn et al.* v. *The Executors of Gershom Dunn, deceased,* in April term, eighteen hundred and twenty-nine.* That decree, however, was subse-

---

* The interlocutory order in this case, made by chancellor Williamson, on the twenty-eighth of October, A. D. eighteen hundred and twenty-eight, upon which the final decree was grounded, omitting the formal parts, is as follows :—

" It appearing to the court that the decrees of the orphans' court of the county of Middlesex, the one made in the term of June, in the year of our Lord eighteen hundred and eight, and the other in the term of September, in the year of our Lord eighteen hundred and eleven, allowing and confirming the accounts of the said B. F. R. and P. F. R., executors of the last will and testament of Gershom Dunn, deceased, as aforesaid, are final decrees, made upon due notice and advertisement thereof, given and published by the said executors, as prescribed by law, and that the same were made on final settlement of the accounts of said executors; and that they ought to be and are, final and conclusive between the parties, as well the complainants as the said defendants, as to the matters contained therein and established; and that the defendants, executors as aforesaid, ought to be jointly charged with the balance found in their hands by

[Fennimore v. Fennimore.]

quently reversed in the court of appeals in the last resort, and upon that very point, and the reversal was calculated to unsettle the course of decision on this important question.

In this case, however, the representatives of Thomas Fennimore deny that the account, as finally settled in the orphans' court, was such a joint account as to be within the rule adopted by this court, supposing that rule still to be operative.

The account appears to consist of two parts. The first is a general account, showing the receipts and disbursements of the executors, and the general balance in their hands in favor of the estate. It is headed in the usual form, viz.: "The account of Thomas Fennimore, esquire, and Samuel Fennimore, executors of the last will and testament of Thomas Fennimore, late of the county of Burlington, deceased, as well of and for such and so much of the goods, chattels and personal estate, and the net proceeds of the real estate of the said deceased, sold by the direction of his will, as have come to their hands to be administered,

the last mentioned decree of the said orphans' court. It is thereupon ordered, adjudged and decreed, that it be referred to L. K. esquire, to take an account between the said parties of the estate of the said testator which came into the hands of the said B. and P. F. R., executors as aforesaid, or which with due diligence might have been received by them, &c. And that the said accounts be taken subject to the said decree of the said orphans' court, and the accounts of the said executors therein and thereby confirmed, and without in any wise varying or impeaching the same."

An appeal from this decree was taken by B. F. R., one of the executors, and at May term, A. D. eighteen hundred and thirty-one, the decree of the chancellor was reversed by the following vote, viz.: For reversal, councillors Dow, Wright, Mickle, Townsend, Capner, Condict, Seeley and Robbins—8. For affirmance, councillors Board, Green, Shinn, Newell, Ryerson, and the president, (Vroom) 6.

The statute (*Elmer's Digest*, 365, *sec.* 32) enacts, that "The sentence or decree of the orphans' court, on the final settlement and allowance of the accounts of executors, administrators, guardians or trustees, shall be conclusive upon all parties, and shall exonerate and for ever discharge every such executor, administrator, guardian or trustee from all demands of creditors, legatees or others, beyond the amount of such settlement, except for assets or moneys which may come to hand after settlement as aforesaid, excepting also in cases where a party applying for a re-settlement shall prove some fraud or mistake therein to the satisfaction of the orphans' court."

38

[Fennimore v. Fennimore.]

as for their payments and disbursements out of the same." On the debit side of the account, the charges are general. On the credit side, the disbursements of the two executors are separated. The payments made by Thomas are specified and credited to him, and in like manner the payments made by Samuel are credited to him separately. The balance struck and reported by the surrogate is a general balance.

The second part of the account purports to be a separate account between the two executors, and is headed as follows:—
"The said executors charge themselves and pray allowance for the aforesaid assets and disbursements as between themselves, and in their separate hands, as follows"—and then is given a statement of the amount of assets received by each executor.

These two accounts appear to have been considered by the surrogate and the court, as separate parts of one and the same account, exhibiting at one view the full net amount of the residuum, and the different parts of it, in the hands of each of the executors. Both appear to have been stated by the surrogate, and passed on by the court. The order for allowance is as follows: "The surrogate having reported this account for allowance, and the same appearing to have been advertised according to law, and no exceptions made thereto, it is therefore decreed that the same be allowed in all things, as reported by the surrogate." Further than this there is no adjudication or decree of the court, and for aught that appears the account as filed is the only evidence of the settlement. This is certainly a loose mode of doing business; but we all know that the manner of settling these accounts is not uniform. It differs in different counties, and will continue to do so, as long as the present organization of that court is permitted.

There must have been some object in stating the account in the way in which it appears; and I think it very evident the object was to show the amount of assets in each one's hands, and to have their separate liabilities adjusted and sanctioned by judicial authority. For any other purpose, the interference of the court was neither necessary nor proper. If the executors

merely wished to know for their own satisfaction what proportion of the funds was in each one's hands, it could have been ascertained without the aid of the court. It was entirely a private concern between the two executors, and the court had no cognizance of it. In all final settlements, its decrees are intended to operate and do operate upon the rights of creditors, legatees and next of kin. These settlements are made for their benefit. They are considered as parties. Public notice must be given, and they are bound by the decree of the court. But after a general settlement is made by executors or administrators, in the usual way, and those entitled to receive the estate are all paid and satisfied, if difficulties should arise between the executors or administrators themselves, as to their receipts and disbursements, the orphans' court would have no power to adjust them. They are private matters, over which they have no jurisdiction.

It is right to consider that the court acted, and intended to act, within its legitimate authority. The executors had a right to present their accounts separately, and to do it under the general notice. The court had authority to decree what proportion of the estate was in each one's hands, and how each one was to be charged; and having so decreed, we are to consider it as operative and binding on the rights of the parties; and the joint account must be considered as qualified and explained by the separate one.

I think, therefore, that even if the principle as declared by this court in the case of *Dunn* v. *Randolph* be considered as in force, that a joint settlement creates a joint liability, this case is not fairly within it.

Apart from that settlement, there is nothing to charge the estate of Thomas with any default of Samuel, his co-executor. The equity of the case is the other way. It has been shown that for so much of the money or assets as came to the hands of Samuel from the purchase of the real estate, Thomas was not responsible. And as regards the personal property received by Samuel, the master states in his report, that there was no evi-

[Fennimore v. Fennimore.]

dence laid before him showing the manner of the original receipt, or any agency of Thomas Fennimore therein, or control over it, or accountability for it, (unless it may be found in the deposition of Margaret Fennimore,) except what appears upon the account filed and settled. I have examined the deposition referred to in the report of the master, but do not think there is any thing in it of sufficient importance to affect the liabilities of the executors.

Upon the whole case, I am of opinion that the estate of Thomas is only liable to pay the amount which was in his hands, according to the report of the master, and is not bound for any default of Samuel, the co-executor.

Decree accordingly.